## Sheridan Flouring Mills v. Uniontown Baking Co.

*Bane & Bane,* for plaintiff.

*Chad L. John,* for defendant.

MORROW, J., October 5, 1940.—This matter comes before the court on a case stated, the facts not being in dispute. The suit is in assumpsit to collect $267.50 with interest from April 10, 1937, being the balance due and unpaid on a trade acceptance dated January 4, 1935, for

the sum of $717.50, executed by defendant and delivered to plaintiff January 12, 1935.

The transaction resulting in the giving of the trade acceptance arose from the shipment by plaintiff on January 4, 1935, to defendant of 205 barrels of Diamond D flour at $7 per barrel, the price amounting to $1,435. All of this price was paid by defendant to plaintiff, except the above-stated balance remaining unpaid on the trade acceptance. Prior to the shipment of this flour defendant, on January 3, 1935, telegraphed plaintiff to wire best price on this flour, to which plaintiff replied offering immediate shipment of this flour on usual terms at $7 per barrel delivered in Uniontown. Defendant on the same day wired acceptance of one car of flour, which was delivered to defendant as aforesaid, the car containing 205 barrels.

It is admitted that the sum mentioned remains unpaid on the trade acceptance, but defendant sets up a defense and counterclaim to the effect that, pursuant to the Agricultural Adjustment Act of May 12, 1933, 48 Stat. at L. 31, plaintiff was required to pay a tax of 30 cents for every bushel of wheat processed during the preceding month, which tax was equivalent to a tax of $1.38 per barrel of flour; that in the price of $7 per barrel for said flour plaintiff included the sum of $1.38 per barrel, or an amount equal to the processing tax aforesaid; that defendant had previously bought and paid for flour, which with this shipment totaled 615 barrels, and the total contract price therefor included the processing tax of $848.70.

The former purchases had been under a written contract (Millers' National Federation Uniform Sales Contract) which contained this provision as to taxes, viz:

"TAXES: The price named in this contract includes all taxes as at the date hereof proclaimed by the Secretary of Agriculture by virtue of the authority vested in him by the Agricultural Adjustment Act of the United States. Under said Act it is provided that said taxes may

be changed from time to time. It is recognized by the parties hereto that there is a growing tendency on the part of the United States and the separate states to tax grain and grain products, containers and other items used in connection with the manufacturing, processing, blending, sale or distribution thereof. It is therefore, agreed and understood that if, after the date of this contract, the commodities and/or containers, or other items used in connection with the manufacturing, processing, blending, sale or distribution thereof, shall become subject to any increase in taxes or to any new or additional tax or taxes other than those included in the price hereof, (if the seller shall be required by law to collect such increases or additional taxes), then, in that event, said increases or additional taxes shall be added to the price hereof; and correspondingly if any tax included in the price hereof shall be decreased or abated, then, in that event, said decrease or abatement shall be deducted from the price hereof."

The Agricultural Adjustment Act, supra, was declared unconstitutional by the United States Supreme Court on January 6, 1936, in United States v. Butler et al., etc., 297 U. S. 1, 53.

Paragraph 13 of the case stated sets forth that the only question to be determined is the right of defendant to recover back or receive credit for the sum of $1.38 per barrel on the contract price of said flour under the foregoing statement of facts. And if the court be of the opinion that defendant has the right to recover from plaintiff the $1.38 per barrel, represented by the processing tax on flour sold defendant under the terms of the Millers' National Federation Uniform Sales Contract and the three telegrams and the trade acceptances, herein mentioned, then judgment should be entered for defendant in the sum of $581.20, but if not, then judgment should be entered for plaintiff for $267.50 with interest from April 10, 1937, and costs.

It will be observed that plaintiff was not relieved from the payment of this tax, the last sale and delivery of flour to defendant being in January 1935, whereas the law was not declared unconstitutional until a year later. It will also be observed that there is no allegation that the tax was not passed on by defendant and borne by its customers.

Substantially the same question now submitted for determination seems to have been under consideration in several cases, with decisions against the contention here made on behalf of defendant. In South Coast Corp. v. Milburn-Johnston Grocery Co., 196 Ark. 486, 118 S. W. (2d) 586, decided June 27, 1938, it is said (p. 490) :

"The law seems to be well settled that unless a manufacturer contracts to refund taxes imposed by the government to a buyer, the buyer cannot recover the tax because the tax is afterwards annulled or the act imposing same is declared to be unconstitutional."

There is this provision in the written contract quoted above:

"If any tax included in the price hereof shall be decreased or abated, then, in that event, said decrease or abatement shall be deducted from the price hereof."

This provision does not cover sales which took place before any change or abatement: Johnson v. Igleheart Bros., Inc., 95 F.(2d) 4. In this case, decided by the Circuit Court of Appeals, Seventh Circuit, February 11, 1938, plaintiff brought suit to recover from defendant therein a part of the contract price of flour purchased by plaintiff from defendant and claimed by plaintiff to represent an amount paid by him to defendant to cover processing tax imposed upon the latter under the provisions of the Agricultural Adjustment Act. The court said (p. 9) :

"The contracts called for the delivery of the flour at various times over an extended period and considering the nature of plaintiff's business, it is not an unreasonable assumption that whatever amount was included in

the contract price as processing tax, was passed on to those with whom it dealt. There is, of course, no allegation in the pleadings to this effect, but in the absence of an allegation to the contrary, how can this court say, as between the parties hereto, that the defendant has money, even if it be conceded that the same was collected as a processing tax, which belongs to the plaintiff? . . .

"In the instant case the amount of the alleged tax was included and absorbed in the price named in the contract and paid by the buyer, and we think it was a price to be paid at all events."

In Johnson v. Scott County Milling Co., Inc., 21 Fed. Supp. 847, it is held:

"Where a product is sold at a specified price and a tax levied against the seller is buried in the price, buyer cannot recover tax paid from seller even though seller may be relieved from payment of tax." See also Golding Bros. Co., Inc., et al. v. Dumaine et al., 93 F.(2d) 162, O'Connor-Bills, Inc., et al. v. Washburn Crosby Co., 20 Fed. Supp. 460, and Planters Nut & Chocolate Co. v. Brown-Murray Co., Inc., 128 Pa. Superior Ct. 239.

In the case at bar plaintiff, the seller, not having been relieved from payment of the tax, no reason appears in any view of the matter why defendant, the buyer, should recover from the seller the processing tax in question. Under all the authorities above cited it seems clear that the question for determination must be decided in favor of plaintiff.

*Order*

And now, October 5, 1940, after consideration and for the reasons set forth in the opinion filed herewith, it is ordered and decreed that judgment be and it is hereby entered in favor of plaintiff and against defendant in the sum of $267.50, with interest thereon from April 10, 1937, and costs.